LEIGH M. CLARK, Supernumerary Circuit Judge.
A jury found defendant guilty of robbery, fixed his punishment at ten years imprisonment in the penitentiary, and he was sentenced accordingly by the court.
The testimony was brief. The main question presented on appeal is whether there was sufficient testimony to support a conviction. A scintilla of evidence is not enough. Massengale v. State, 36 Ala.App. 195, 54 So.2d 85; White v. State, 37 Ala.App. 424, 69 So.2d 874; Lloyd v. State, 50 Ala.App. 646, 282 So.2d 85.
The evidence shows without dispute that a robbery was committed by one Willie Frank Reese. The evidence is also undisputed that the defendant did not participate in the actual robbery, that is, that he was not present in the store of Mrs. Ramsay Brown, while she was robbed on October 10, 1974, by Reese. Mrs. Brown testified that defendant and Reese had been in the store about five minutes before the robbery, that they had driven up in a white automobile and that they had left in the same automobile; that when the automobile returned, Reese got out of the car, came into the store, and as she was attempting to wait on him, he struck her over the back of the head, “picked up the money box and out the door he went.” She said she picked up a *54 gun, shot through the córner of the window, but by the time she shot “the car was gone. You could have heard gravel going everywhere.” She said that there was “$1200.00 or a little better.” in the money box. She also said that her husband, who was not in the store at the time, shot a gun just after she had done so. She testified that when defendant and Reese were in the store about five minutes before the robbery, defendant bought a pack of cigarettes while Reese looked around.
According to the evidence, Tallapoosa County authorities located the automobile, which belonged to a relative of Reese, at Auburn. They located defendant, who lived on the road between Auburn and Tuskegee. They placed him in custody. He made a statement that he had been with Reese the day before, October 10; they had ridden around on a motorcycle; they were in Tuskegee and had gone to Auburn, where they picked up the automobile and “went back to Tuskegee.” There was no testimony as to what defendant said happened after he and Reese returned to Tuskegee.
There was some testimony corroborating Mrs. Brown’s testimony; the particular automobile had been to Mrs. Brown’s store twice the day she was robbed and there was only a short interval of time between the two trips to the store. No witness, other than Mrs. Brown, identified defendant as being in or around the store or as being in the automobile while in the community where the robbery occurred.
Appellee contends that defendant’s presence at the store about five minutes before the robbery occurred and evidence to the effect that he then came to the store with Reese and left the store with Reese, justified a verdict of guilty, when considered with all the other circumstances shown by the evidence.
In support of appellee’s contention, Hunter v. State, 55 Ala.App. 475, 316 So.2d 722 and Gilbreath v. State, 54 Ala.App. 676, 312 So.2d 81, are relied upon. In Hunter, it is stated:
“We think there was ample evidence from which the jury could infer that appellant-defendant was the driver of the ‘get-away’ car, overtaken by the police, and that he was an accomplice, or accessory in the perpetration of the robbery. T. 14, § 14, Code of 1940.”
A closer connection between defendant and the robbery was shown in Hunter than in this case. In Hunter, the automobile in which Hunter and the actual robber left the scene of the robbery was pursued by officers and after being stopped by the officers, Hunter and the robber were in the front seat and a large amount of money was found under the floor covering. In Gil-breath, defendant and the actual robber were seen in an automobile parked in front of the store just before the robber entered the store and committed the crime. Immediately thereafter, the automobile, the robber and the defendant were missing from the scene.
When defendant was apprehended the day after the robbery, he had on a shirt that was identified as the same or similar shirt he was wearing the afternoon of the robbery. This, of course, corroborates the testimony of Mrs. Brown that defendant was in the store with the robber about five minutes before the robbery occurred.
As we see it, a close connection between defendant and the robber on the afternoon of the robbery is established by the evidence. We look for, and do not find, convincing evidence of a connection between defendant and the robbery that is not reasonably reconcilable with innocence.
During the course of argument of the prosecuting attorney, the following occurred:
“MR. YOUNG: ... We have never said that, or pretended to say, that we were gonna prove that this man here is the one that bludgeoned Mrs. Brown, but he’s just as guilty as if he had. Oh, he says we have never put two people in the car. Mrs. Brown, I believe, in her testimony said there were two the first time they came there, that one cased her *55 storehouse as sometimes criminals do m such a case by looking it over, and one occupies the owner’s attention while the other is doing it, and that they left, and in just a very short time here they come zooming back. Oh, my friend here says there’s no proof that he didn’t come back by himself, the reason he came back by himself — or he got somebody else up the road to do the driving and he dropped this man off. But he forgot, and he kind of stuttered and stammered when he got to Gerald Downing, but he would like to have forgotten, oh, how he would loved to have forgotten and have you forget that Gerald Downing put two males in that automobile when they came by there and they turned and went to Montgomery. You heard the testimony. Now, remember all of this took place in a matter of fifteen minutes from the time Mrs. Brown says they first came in her store until the time that Gerald Downing saw them head toward Montgomery. And then there was Officer Berry who followed the car and got the tag number, and one little statement we got in evidence by investigator Abbett that he admittedly was riding in this automobile with the tag number and the picture of the tag number and all that we have here, he admittedly was riding in that car. Don’t you know if there had been a separation of partnership, as my friend suggests, that they would have had that testimony by persons who knew of the switch of partnership—
“MR. MOONEYHAM: Your Honor, I would object. I think he’s commenting now on the failure of the defendant to testify in which he said if there had been anyone who knew anything about it, someone would have testified. I think it’s a comment on the failure of the defendant to testify, which he has no right to—
“MR. YOUNG: I respectfully submit that is not argument of that.
“THE COURT: Overruled.”
It seems to us that in the above extract from the argument of counsel for the prosecution, he was referring to argument of defense counsel calling attention to what we think of as a gap in the testimony connecting defendant with the robbery. Counsel for the prosecution realized the importance and significance of such argument, if correct, and in response stated that Gerald Downing had “put two males in that automobile when they came by there and they turned and went to Montgomery.” We do not find that Gerald Downing testified that there were two males in the automobile when the automobile turned and went to Montgomery. He testified that he had been asked if he had “noticed a white car with two black males in it.” He said that he had, that he had seen the automobile on more than one occasion that day. His testimony continued as follows:
“Q Tell the Court and jury at what intervals in relation to Mrs. Brown’s coming to your store it was that you saw this car.
“A Well, about three minutes — ten minutes after 3:00 I saw this white car go east up to Mrs. Brown’s store, towards Mrs. Brown’s store.
“Q That’s on 50?
“A On Highway 50; and then about 3:25 this same car came back down the Highway 50 and headed south on 49.
“Q That is toward Reeltown?
“A Right, and then about five minutes later Mrs. Hamby drove up with Mrs. Brown, and Mrs. Brown asked me had I seen this particular car, and she was in the ear with her head all bloodied up and blood running down all over her, and told me what happened and wanted me to call the sheriff’s office.
“Q Did you make a call to the sheriff’s office?
“A I did.
“Q And did you notice anything particular about this white car when it came by your store? The two times it came by your store?
“A Well, the only think I noticed about the car, I noticed the tag number on the car, that it had a Montgomery *56 County tag, and it was a nice looking car, it was white and it was really shiny, and I just paid attention to the car.”
Sincerity of counsel for the State does not assuage the injury to defendant in his statement:
“Now, remember all of this took place in a matter of fifteen minutes from the time Mrs. Brown says they first came in her store until the time that Gerald Downing saw them head toward Montgomery.”
Mr. Downing did not testify he saw “them,” that is, defendant and the other man in the automobile head toward Montgomery. There is no definite evidence in this case that there was anyone in the automobile with Reese at the time he drove up to the store to rob it, that anyone was in the automobile while he was robbing the store, or that there was anyone in the automobile with him as he left the store after robbing it.
We can see that under some circumstances such a gap in the evidence might not be fatal, but it appears that it became such an important matter that it was strongly argued to the jury by both the State and defendant’s counsel, and in that argument the State had to rely upon purported evidence that was not actually in the case.
We agree with counsel for the State that his argument to the effect that defendant should have supplied the missing link or bridged the gap in the testimony, was not necessarily a comment upon the failure of defendant himself to testify, but we consider it of great significance in our effort to determine whether there was sufficient evidence to warrant a conviction. In this connection, we should also note that the State was in a much better position to show that two persons were in the automobile immediately before and immediately after the robbery, if such was true, then defendant would have been to have shown that there were not two people in the automobile at such time,' if only one person was in the automobile. If only one person was in the automobile while it was going to the store immediately before the robbery and returning from it immediately after the robbery, defendant would not necessarily have known it. If there were two in the automobile immediately before and immediately after the robbery, the State should have shown it, and defendant was not subject to criticism for his failure to show it by witnesses who were equally as available to the State as to defendant. This ground of objection to argument of counsel for the State was not interposed, but the argument of the State, the objection of defendant and the response of State’s counsel all emphasize the weakness of the State's position that there was ample evidence to support the conviction and underscores our view that there was not. The evidence is sufficient to give rise to a strong suspicion of defendant’s guilt, but that is not enough. A conviction cannot be sustained on the basis of surmise, speculation and suspicion. Parker v. State, 280 Ala. 685, 198 So.2d 261; Wallace v. State, 52 Ala.App. 331, 292 So.2d 140; McCurdy v. State, 42 Ala.App. 305, 162 So.2d 892; Lloyd v. State, 50 Ala.App. 646, 282 So.2d 85; Black v. State, 52 Ala.App. 528, 294 So.2d 777.
It is obvious that the State endeavored to raise this case before the plane of suspicion, and thought it had done so, by testimony to the effect that defendant returned with the robber to the store on his second trip and that the robbery took place while defendant was on hand at the scene, outside the store, and left with the robber and the loot in the robber’s automobile. There was no such evidence, however. Whether any of this occurred is left to conjecture only. The burden was upon the State to prove, not upon the defendant to disprove, this necessary link in the testimony. In the absence of evidence on the issue, a vital link in the testimony is missing, which can be supplied by another trial only.
The foregoing opinion was prepared by Supernumerary Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under Section 2 of Act No. 288 of July 7, 1945, as amended; his opinion is hereby *57 adopted as that of the Court. The judgment below is hereby
REVERSED AND REMANDED.
All the Judges concur.